IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

JAN 1 3 2026

400017845

Nathan Ochsner, Clerk of Court

RAYMOND C. BRANTLEY,

     Plaintiff,

v.

Civil Action No. _____

4:26 CV 0241

CITY OF HOUSTON; JANE CHEEKS,

individually and in her official capacity as

Director of Human Resources; STEPHANIE

MYERS, individually and in her official

capacity as Assistant Director of Benefits;

DARIEN HELTON, individually and in his

official capacity as Director of Employee

Relations; ARTURO G. MICHEL,

individually and in his official capacity as

City Attorney,

     Defendants.

**COMPLAINT FOR VIOLATIONS OF 42 U.S.C. § 1983**

**DEPRIVATION OF DUE PROCESS AND FIRST AMENDMENT RIGHTS**

**NATURE OF THE ACTION**

1.        This is a civil rights action brought pursuant to 42 U.S.C. § 1983 for violations of Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution. Plaintiff Raymond Brantley, a 67-year-old veteran with over 30 years of employee benefits experience, was hired by the City of Houston in May 2023 as Benefits Division Manager. After receiving exemplary performance evaluations and a merit increase in November 2023, Plaintiff was subjected to systematic retaliation and denial of due process following his complaints about irregularities in the hiring of his supervisor, Stephanie Myers.

2.        From July 2024 through March 2025, Defendants subjected Plaintiff to unprecedented employment restrictions including conditions functionally equivalent to house arrest, denied him any neutral adjudicator for his grievances, allowed a probationary employee to exercise disciplinary authority over a non-probationary employee in violation of established civil service protections, and ultimately forced his resignation under threat of termination. These actions violated clearly established constitutional rights and were undertaken in retaliation for Plaintiff's protected speech regarding governmental misconduct.

**JURISDICTION AND VENUE**

3.          This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and

1343(a)(3)-(4) because this action arises under the First and Fourteenth Amendments to the

United States Constitution and 42 U.S.C. § 1983.

4.          Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because all

defendants reside in this district and all events giving rise to this action occurred in this district.

## PARTIES

5.          Plaintiff Raymond C. Brantley is a resident of Montgomery County, Texas, within

the Southern District of Texas. At all times relevant to this complaint, Plaintiff was employed by

the City of Houston as Benefits Division Manager from May 1, 2023, until his constructive

discharge on March 21, 2025.

6.          Defendant City of Houston is a municipal corporation organized under the laws of

the State of Texas. The City of Houston is subject to suit under 42 U.S.C. § 1983 pursuant to

*Monell v. Department of Social Services*, 436 U.S. 658 (1978).

7.          Defendant Jane Cheeks is sued individually and in her official capacity as

Director of Human Resources for the City of Houston. At all times relevant to this complaint,

Defendant Cheeks supervised the Benefits Division and had final authority over employment

decisions affecting Plaintiff. Defendant Cheeks acted under color of state law in her capacity as a City official.

8.        Defendant Stephanie Myers is sued individually and in her official capacity as Assistant Director of Benefits for the City of Houston. At all times relevant to this complaint from May 1, 2024 through April 30, 2025, Defendant Myers was a probationary employee with no property interest in her own employment. Despite her probationary status, she was permitted to exercise disciplinary authority over Plaintiff, a non-probationary employee with civil service protections. Defendant Myers acted under color of state law in her capacity as a City official.

9.        Defendant Darien Helton is sued individually and in his official capacity as Director of Employee Relations for the City of Houston. Defendant Helton participated in the disciplinary process against Plaintiff and denied him procedural protections. Defendant Helton acted under color of state law in his capacity as a City official.

10.       Defendant Arturo G. Michel is sued individually and in his official capacity as City Attorney for the City of Houston. As the City's chief legal officer, Defendant Michel received notice of constitutional violations against Plaintiff and failed to take corrective action, thereby ratifying the violations through deliberate indifference. Defendant Michel acted under color of state law in his capacity as a City official.

**FACTUAL ALLEGATIONS**

**A.     Plaintiff's Exemplary Performance and Completion of Probationary Period**

11.         Plaintiff was hired by the City of Houston on May 1, 2023, as Benefits Division Manager, a classified civil service position with a salary of $114,286.82 annually. Plaintiff is an exempt employee under the Fair Labor Standards Act.

12.         Upon Plaintiff's arrival, the Benefits Division was experiencing significant operational problems including issues with the newly implemented BenefitsFocus technology system, low staff morale, and compliance deficiencies.

13.         Plaintiff successfully addressed these problems. Within six months, he resolved most technical issues, improved staff morale, published seven requests for proposals, and updated outdated policies and procedures.

14.         In November 2023, following completion of his probationary period, Plaintiff received a performance evaluation rating of 4.5 out of 5.0 and a merit increase. Director Cheeks publicly praised Plaintiff's leadership and the Benefits Team's transformation of the division.

15.         On November 21, 2023, based on Plaintiff's exceptional performance, Director Cheeks recommended and the Mayor approved a 10% performance pay zone increase for Plaintiff, raising his salary from $104,000 to $114,286.82.

**B.     Myers' Hiring and Probationary Status**

16.       In April 2024, the City hired Stephanie Myers as Assistant Director of Benefits. Her official start date was May 1, 2024.

17.       Under City of Houston civil service rules, Ms. Myers was subject to a twelve-month probationary period extending from May 1, 2024 through April 30, 2025. During this probationary period, she had no property interest in continued employment and could be terminated at any time for any reason.

18.       By contrast, Plaintiff had completed his probationary period in May 2024, one year after his May 1, 2023 hire date. Plaintiff therefore had a constitutionally protected property interest in his continued employment under *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985).

19.       Despite Ms. Myers' probationary status and lack of property interest in her own employment, the City permitted her to exercise full disciplinary authority over Plaintiff, a non-probationary employee with civil service protections.


**C.    Plaintiff's Protected Activity - OIG Complaint Regarding Hiring Irregularities**


20.       During the hiring process for the Assistant Director position, Plaintiff became aware of irregularities in Ms. Myers' qualifications and employment history.

21.        On October 9, 2024, Plaintiff filed a formal written complaint with the City of Houston Office of Inspector General documenting concerns that Ms. Myers' hiring violated the City's merit-based selection policies and the Meet and Confer Agreement requirement that the best-qualified candidate be selected.

22.        Plaintiff's OIG complaint addressed matters of public concern including proper use of taxpayer resources, governmental transparency in hiring, and compliance with civil service regulations governing a major city department managing employee benefits affecting thousands of workers and hundreds of millions of dollars in public funds.

23.        Plaintiff's complaint to the OIG constitutes protected speech under the First Amendment because it addressed matters of public concern and was not made pursuant to Plaintiff's official job duties under *Garcetti v. Ceballos*, 547 U.S. 410 (2006).

**D.    Initial Retaliatory Actions and Escalating Discipline**

24.        Within 33 days of her May 1, 2024 employment start date, on or about June 3, 2024, Ms. Myers told Plaintiff she was "not impressed" with his leadership and would be "making changes."

25.        On July 7, 2024, approximately 75 days into her probationary employment, Ms. Myers issued Plaintiff a Level II Corrective Action alleging insubordination, unprofessionalism, intimidating and bullying tactics, disrespect, and hostility.

26.         The allegations in the July 7, 2024 corrective action were based on Plaintiff's

emotional reaction during a July 2, 2024 meeting in which Ms. Myers accused him of improperly

delegating his work responsibilities. No investigation was conducted before the disciplinary

action was issued.

27.         On July 23-24, 2024, Plaintiff was placed on Decision-Making Leave and coerced

into signing an 18-month Corrective Protective Order under threat of immediate termination.

Plaintiff signed the document under duress to preserve his employment.

**E.    Unconstitutional "House Arrest" Conditions**

28.         On March 17, 2025, Director Cheeks issued Plaintiff a "Relief of Duty with Pay"

memorandum that imposed unprecedented restrictions on Plaintiff's liberty during work hours.

29.         The March 17, 2025 memorandum required Plaintiff to:

a.     "remain available and on call at your home between the hours of 7:30 a.m. to 4:30

p.m. daily, Monday through Friday";

b.     "call Stephanie Myers at 832-393-6136 or 832-993-9942 at the following

designated times: 7:30 AM, 12:00 PM and 4:30 PM";

c.    "not leave your home without receiving specific prior approval from Stephanie Myers"; and

d.    "leave word where you may be reached at all times in the event that such permission to leave your home is granted."

30.    These conditions subjected Plaintiff to restrictions on his physical liberty functionally equivalent to criminal house arrest, despite the absence of any criminal charges, any probable cause determination, any warrant, or any judicial oversight.

31.    Despite Plaintiff's status as an FLSA-exempt employee earning $114,286.82 annually, he was subjected to hourly monitoring requirements typically reserved for non-exempt employees or individuals under criminal supervision.

32.    The "house arrest" conditions were imposed without any pre-deprivation hearing and without any legitimate governmental interest justifying such severe restrictions on Plaintiff's liberty.

**F.    Denial of Neutral Adjudication - *Tumey* Violations**

33.    Following the July 12, 2024 disciplinary action, Plaintiff filed a Step I grievance challenging the corrective action as unjust and retaliatory.

34.      The City's grievance procedures required a Step I review by the employee's immediate supervisor. In Plaintiff's case, the immediate supervisor was Stephanie Myers - the same individual who had initiated and recommended the disciplinary action.

35.      Ms. Myers conducted the Step I grievance review and denied Plaintiff's appeal, thereby adjudicating her own decision to discipline Plaintiff.

36.      Plaintiff appealed to Step II. The Step II hearing was conducted by Director Cheeks and Assistant Director Helton.

37.      During the Step II hearing, when questioned about the basis for disciplining Plaintiff for becoming upset during a meeting, Director Cheeks stated that Plaintiff was "held to a higher standard." This statement was witnessed by Akyta Battles, the union representative, and Marshall Watson, the Civil Service representative.

38.      The "higher standard" articulated by Director Cheeks was arbitrary, was not applied to any other employee in similar circumstances, and was invoked specifically to justify disparate treatment of Plaintiff.

39.      Director Cheeks denied Plaintiff's Step II appeal on the grounds that Plaintiff's emotional reaction to being falsely accused constituted insubordination warranting discipline.

40.        Plaintiff appealed to Step III, which under City procedures provides for review by the Civil Service Commission, an independent body not involved in the underlying disciplinary decision.

41.        A Step III hearing was scheduled for November 5, 2024. On November 3, 2024 - two days before the scheduled hearing - the City canceled the Step III review.

42.        Despite Plaintiff's repeated requests for rescheduling, the Step III hearing was never conducted. The City thereby denied Plaintiff access to the only neutral forum available under the grievance procedures.

43.        The denial of a neutral adjudicator violated the Due Process Clause under the principle established in *Tumey v. Ohio*, 273 U.S. 510 (1927), which for nearly 100 years has prohibited interested parties from adjudicating matters in which they have a stake.

## G.    False Allegations and Pretext

44.        On March 17, 2025, in a memorandum recommending Plaintiff's indefinite suspension, Ms. Myers alleged that Plaintiff had "failed to complete" a strategic plan for the Benefits Division.

45.        This allegation was provably false. Plaintiff had completed and submitted a comprehensive 12-page strategic plan titled "City of Houston Wellness VBID" projecting $95

million in savings over three years. The plan is dated, documented, and was submitted to Ms. Myers.

46.          The false allegation regarding the strategic plan demonstrates that the stated reasons for Plaintiff's discipline were pretextual and that the true motive was retaliation for Plaintiff's protected activities.

## H.    Witness Corroboration of Hostile Management Practices

47.          Yvonne Norwood, who served as Assistant Manager of Benefits Operations until taking early retirement in response to Ms. Myers' management practices, provided a written statement corroborating Plaintiff's allegations.

48.          Ms. Norwood's statement documents that:

a.     Ms. Myers immediately began questioning staff about their opinions of Plaintiff and Ms. Norwood in an effort to undermine their authority;

b.     Ms. Myers consistently cut off Ms. Norwood during meetings, dismissed her input, and undermined her authority with staff;

c.     Ms. Myers conducted "attack sessions" during leadership meetings where she publicly criticized Plaintiff or Ms. Norwood in front of other team members;

d.    Ms. Myers lacked experience as a leader and repeatedly made decisions that demonstrated she was "ill prepared" for her role; and

e.    The working environment under Ms. Myers became so intolerable that it prompted Ms. Norwood to take early retirement despite her intention to continue working.

49.    Ms. Norwood's statement provides independent corroboration of the retaliatory and hostile nature of Ms. Myers' conduct toward Plaintiff.

## I.    October 2024 Protected Communication to Supervisors

50.    On October 28, 2024, Plaintiff sent a detailed email to Director Cheeks and Ms. Myers documenting concerns about Ms. Myers' management practices and their impact on the Benefits Division.

51.    In the October 28, 2024 email, Plaintiff informed Director Cheeks that Ms. Myers' management approach had created an environment where "three team members currently seeking transfers or alternative employment," that there had been "destruction of team dynamics," and "decreased morale and growing division among staff members."

52.         Plaintiff's October 28, 2024 communication to his supervisors regarding workplace problems affecting multiple employees and the functioning of a major city department constituted protected speech on matters of public concern.

**J.    Notice to City Officials and Deliberate Indifference**

53.         On December 2, 2024, Plaintiff sent City Attorney Arturo G. Michel a formal demand letter via certified mail detailing the constitutional violations he had experienced, including the denial of due process, the retaliatory conduct, and the systematic deprivation of his employment rights.

54.         The December 2, 2024 letter specifically informed City Attorney Michel, the City's chief legal officer and final policymaker on legal matters, of:

a.     The "house arrest" conditions imposed on Plaintiff;

b.     The denial of neutral adjudication through the grievance process;

c.     The improper exercise of disciplinary authority by a probationary employee over a non-probationary employee;

d.     The retaliatory nature of the disciplinary actions;

e.     The false allegations used as pretext for discipline; and

f.     The cancellation of the Step III Civil Service hearing.

55.          City Attorney Michel received the December 2, 2024 letter but took no action to investigate the constitutional violations, impose corrective measures, or discipline the officials responsible for violating Plaintiff's rights.

56.          Despite having actual notice of serious constitutional violations, City Attorney Michel's deliberate failure to act constitutes deliberate indifference and ratification of the unconstitutional policies and customs that permitted the violations.

## K.     Constructive Discharge

57.          On March 17, 2025, Ms. Myers recommended that Plaintiff be indefinitely suspended based on the false allegation that he had failed to complete the strategic plan.

58.          On March 20, 2025, Plaintiff was placed on leave without pay and notified that a *Loudermill* hearing was scheduled for March 21, 2025 - providing Plaintiff with only one day to prepare his defense.

59.         On March 23, 2025, under threat of immediate termination and after months of systematic harassment, denial of due process, and retaliatory conduct, Plaintiff was forced to sign a "Resignation in Lieu of Termination" agreement.

60.         The resignation was not voluntary but was coerced under circumstances designed to be so intolerable that a reasonable person would feel compelled to resign.

61.         As a condition of the forced resignation, the City imposed a lifetime ban prohibiting Plaintiff from any future employment with the City of Houston.

62.         At age 67, with a forced resignation and lifetime employment ban from a major Texas city on his record, Plaintiff's career in public sector employee benefits has been effectively destroyed.

## L.    Notice to Mayor and City's Continued Refusal to Remedy Violations

63.         On March 24, 2025, three days after his forced resignation, Plaintiff sent Mayor John Whitmire a comprehensive formal letter documenting the constitutional violations he had experienced and requesting immediate action.

64.         The March 24, 2025 letter to Mayor Whitmire specifically detailed:

a.     The pattern of due process violations and retaliatory actions by senior Human Resources leadership;

b.     The denial of timely Step III Civil Service hearing (canceled October 3, 2024, rescheduled for April 1, 2025, but Plaintiff terminated before it could occur);

c.     The false allegations contained in Myers' March 17, 2025 memorandum recommending indefinite suspension;

d.     The coercive disciplinary measures including the July 23-24, 2024 Decision-Making Leave;

e.     The public stripping of supervisory duties on August 23, 2024;

f.     The forced resignation under duress on March 21, 2025;

g.     Violations of Title VII, the ADA, the FLSA, and due process rights; and

h.     The creation of a hostile work environment through retaliation.

65.          In the March 24, 2025 letter, Plaintiff specifically requested:

a.     An independent investigation led by a neutral, external body into the conduct of Assistant Director Myers, Director Cheeks, and other involved personnel;

b.     Administrative review of HR practices involving retaliation, due process violations, and misuse of corrective action protocols; and

c.     Expungement of all retaliatory documentation from his personnel file, including the Corrective Action, Protective Order, and Indefinite Suspension.

66.     Plaintiff copied the March 24, 2025 letter to Houston City Council Members, the Office of Inspector General, the City Attorney's Office, and the Chief of Staff, ensuring that the City's highest officials were on notice of the constitutional violations.

67.     Plaintiff requested acknowledgment of the letter and confirmation of next steps by April 5, 2025.

68.     Despite the comprehensive documentation of constitutional violations provided to the Mayor and other senior City officials, and despite Plaintiff's specific requests for corrective action, the City of Houston:

a.     Never responded to Plaintiff's March 24, 2025 letter;

b.     Conducted no independent investigation;

c.      Took no administrative action to review the conduct of Myers, Cheeks, or other HR personnel;

d.      Refused to expunge the retaliatory documentation from Plaintiff's personnel file;

e.      Maintained the lifetime employment ban prohibiting Plaintiff from any future City employment; and

f.      Allowed all disciplinary actions and the forced resignation to remain in effect.

69.      The City's complete failure to respond to Plaintiff's March 24, 2025 letter, despite notice to the Mayor and multiple senior officials, demonstrates the City's deliberate choice to permit constitutional violations rather than remedy them, and evidences the need for judicial intervention through injunctive relief.

## CLAIMS FOR RELIEF

### COUNT I

### PROCEDURAL DUE PROCESS

### (42 U.S.C. § 1983 - FOURTEENTH AMENDMENT)

70.     Plaintiff incorporates by reference all preceding paragraphs.

71.     As a non-probationary classified civil service employee, Plaintiff had a constitutionally protected property interest in his continued employment under *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985).

72.     The Fourteenth Amendment's Due Process Clause requires that before a government employee with a property interest in employment may be deprived of that interest, the employee must be provided with notice and an opportunity to be heard before a neutral decision-maker.

73.     Defendants deprived Plaintiff of due process by:

    a.     Permitting Stephanie Myers, a probationary employee with no property interest in her own employment, to exercise disciplinary authority over Plaintiff, a non-probationary employee with civil service protections, in violation of fundamental principles of procedural fairness;

    b.     Requiring Plaintiff's Step I grievance to be adjudicated by Stephanie Myers, the same individual who initiated the disciplinary action, in violation of the principle established in *Tumey v. Ohio*, 273 U.S. 510 (1927), that no person may be a judge in their own case;

c.      Subjecting Plaintiff to an arbitrary "higher standard" not applied to similarly situated employees, as articulated by Director Cheeks during the Step II hearing;

d.      Canceling Plaintiff's Step III hearing before the Civil Service Commission, thereby denying him access to the only neutral adjudicator available under the City's procedures; and

e.      Imposing "house arrest" conditions restricting Plaintiff's physical liberty during work hours without any pre-deprivation hearing or legitimate governmental interest justifying such severe restrictions.

74.      The denial of a neutral adjudicator and the systematic blocking of every avenue for independent review violated clearly established constitutional principles that have been settled law for nearly 100 years.

75.      Defendants Myers, Cheeks, and Helton, acting in their individual capacities, are not entitled to qualified immunity because the right to a neutral adjudicator was clearly established at the time of their actions, and no reasonable official could have believed that adjudicating one's own disciplinary decision or denying access to neutral review was constitutionally permissible.

76.        As a direct and proximate result of Defendants' violations of Plaintiff's procedural due process rights, Plaintiff suffered economic harm including lost wages, lost retirement benefits, and diminished future earning capacity; emotional distress including anxiety, depression, and exacerbation of service-connected PTSD; and reputational harm that has rendered him effectively unemployable in his chosen profession.

## COUNT II

## FIRST AMENDMENT RETALIATION

### (42 U.S.C. § 1983 - FIRST AMENDMENT)

77.        Plaintiff incorporates by reference all preceding paragraphs.

78.        The First Amendment protects public employees from retaliation for speech on matters of public concern that is not made pursuant to their official job duties. *Garcetti v. Ceballos*, 547 U.S. 410 (2006); *Pickering v. Board of Education*, 391 U.S. 563 (1968).

79.        Plaintiff engaged in protected speech by:

    a.    Filing a formal complaint with the City of Houston Office of Inspector General on October 9, 2024, documenting concerns that Stephanie Myers' hiring violated merit-based selection policies and the Meet and Confer Agreement, thereby addressing matters

of public concern regarding proper use of taxpayer resources, governmental transparency, and compliance with civil service regulations;

b.      Communicating to Director Cheeks on October 28, 2024, regarding Ms. Myers' management practices and their detrimental impact on the Benefits Division, including information that multiple employees were seeking transfers, that team dynamics had been destroyed, and that staff morale had significantly declined - all matters affecting the functioning of a major city department serving thousands of employees.

80.      Plaintiff's speech addressed matters of public concern because it involved governmental operations, alleged violations of hiring regulations, potential waste of public resources, and the proper functioning of a city department managing hundreds of millions of dollars in employee benefits.

81.      Plaintiff's speech was not made pursuant to his official job duties under *Garcetti* because reporting suspected hiring fraud to the Inspector General and communicating workplace dysfunction to upper management were not tasks Plaintiff was employed to perform as Benefits Division Manager.

82.      Following Plaintiff's protected speech, Defendants subjected him to escalating adverse employment actions including:

a.    The October 23, 2024 incident in which Ms. Myers disciplined Plaintiff for leaving work 30 minutes early despite his FLSA-exempt status, in violation of federal wage and hour regulations;

b.    The denial of a $100 training completion bonus in January 2025 that was paid to all other employees;

c.    The withholding of information about vacation time shortages in January 2025, resulting in an $862 shortfall in Plaintiff's paycheck;

d.    The false allegation in March 2025 that Plaintiff failed to complete the strategic plan;

e.    The recommendation for indefinite suspension in March 2025; and

f.    The forced resignation and lifetime employment ban in March 2025.

83.    The temporal proximity between Plaintiff's protected speech (October 9 and 28, 2024) and the escalating adverse actions (October 23, 2024 through March 21, 2025), combined with the lack of any legitimate justification for the adverse actions, establishes that Plaintiff's speech was a substantial or motivating factor in the adverse employment actions.

84.        Defendants cannot demonstrate that they would have taken the same actions in the absence of Plaintiff's protected speech, particularly given Plaintiff's exemplary performance record prior to engaging in protected activity.

85.        The retaliation against Plaintiff for engaging in protected speech was undertaken by Defendants Myers, Cheeks, and Helton acting in their individual capacities.

86.        Defendants Myers, Cheeks, and Helton are not entitled to qualified immunity because the right to be free from retaliation for reporting governmental misconduct and workplace dysfunction was clearly established at the time of their actions, and no reasonable official could have believed that retaliating against an employee for filing an OIG complaint or reporting management problems was constitutionally permissible.

87.        As a direct and proximate result of Defendants' retaliation for Plaintiff's protected speech, Plaintiff suffered economic harm including lost wages, lost retirement benefits, and diminished future earning capacity; emotional distress including anxiety, depression, and exacerbation of service-connected PTSD; and reputational harm that has rendered him effectively unemployable in his chosen profession.

## COUNT III

## MUNICIPAL LIABILITY

## (42 U.S.C. § 1983 - MONELL CLAIM AGAINST CITY OF HOUSTON)

88.        Plaintiff incorporates by reference all preceding paragraphs.

89.        Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a municipality may be liable under § 1983 when a constitutional violation results from (a) an official policy or custom, (b) the actions of a final policymaker, or (c) deliberate indifference by officials with final policymaking authority.

90.        The City of Houston is liable for the constitutional violations alleged herein based on the following:

a.        **OFFICIAL POLICY**: The City's grievance procedures, as written and applied, permit employees who initiate disciplinary actions to adjudicate appeals of those same disciplinary actions at Step I, in systematic violation of the *Tumey* principle requiring neutral adjudicators;

b.        **CUSTOM OR PRACTICE**: The City has a widespread custom of denying neutral review to employees who exercise their grievance rights, as evidenced by the pattern of behavior in this case whereby Myers adjudicated her own Step I decision, Cheeks (Myers' direct supervisor with a direct interest in the outcome) conducted the Step II review, and the independent Step III Civil Service hearing was canceled;

c.    **DELIBERATE INDIFFERENCE BY FINAL POLICYMAKER**: On

December 2, 2024, Plaintiff provided detailed written notice to City Attorney Arturo G.

Michel, the City's final policymaker on legal matters, documenting the ongoing

constitutional violations including the denial of neutral adjudication, the retaliatory

conduct, the "house arrest" conditions, and the improper exercise of authority by a

probationary employee over a non-probationary employee. Despite having actual notice

of serious constitutional violations affecting a City employee, City Attorney Michel took

no action to investigate, remedy the violations, or discipline the responsible officials.

This deliberate failure to act in the face of known constitutional violations constitutes

deliberate indifference and ratifies the unconstitutional policies and customs;

d.    **RATIFICATION**: The City, through its final policymakers, had actual

knowledge of the constitutional violations against Plaintiff through the December 2, 2024

letter to City Attorney Michel, yet permitted the violations to continue and culminate in

Plaintiff's constructive discharge on March 21, 2025, thereby ratifying the

unconstitutional conduct. Even after Plaintiff's March 24, 2025 letter to Mayor John

Whitmire and other senior City officials documenting the completed violations and

requesting corrective action, the City refused to respond, investigate, or remedy any of

the constitutional violations, demonstrating the City's deliberate choice to maintain

unconstitutional policies and practices.

91.       The City's policies, customs, and deliberate indifference were the moving force

behind the constitutional violations suffered by Plaintiff.

92.        The City's policies, customs, and deliberate indifference demonstrate a deliberate choice to permit constitutional violations rather than protect employee rights.

93.        The City's continued refusal to remedy the constitutional violations even after receiving comprehensive notice from Plaintiff on March 24, 2025, demonstrates the ongoing nature of the City's unconstitutional policies and the necessity of judicial intervention through injunctive relief.

94.        As a direct and proximate result of the City's policies, customs, and deliberate indifference, Plaintiff suffered economic harm including lost wages, lost retirement benefits, and diminished future earning capacity; emotional distress including anxiety, depression, and exacerbation of service-connected PTSD; and reputational harm that has rendered him effectively unemployable in his chosen profession.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants as follows:

1.        **DECLARATORY RELIEF**: A declaration that Defendants violated Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution;

2.    **INJUNCTIVE RELIEF**:

    a.    An order expunging from Plaintiff's personnel file all disciplinary actions initiated by Stephanie Myers on or after July 12, 2024;

    b.    An order declaring void the March 21, 2025 "Resignation in Lieu of Termination" and removing the lifetime employment ban imposed on Plaintiff;

    c.    An order enjoining the City of Houston from enforcing the lifetime employment ban against Plaintiff;

3.    **COMPENSATORY DAMAGES**:

    a.    Economic damages including lost wages from March 21, 2025 to date of judgment, lost retirement benefits, and diminished future earning capacity;

    b.    Non-economic damages for emotional distress, mental anguish, humiliation, loss of reputation, and exacerbation of service-connected disabilities;

4.    **PUNITIVE DAMAGES** against Defendants Myers, Cheeks, Helton, and Michel in their individual capacities for willful, wanton, and reckless disregard of Plaintiff's constitutional rights;

5.    **ATTORNEYS' FEES AND COSTS** pursuant to 42 U.S.C. § 1988(b);

6.    **PRE-JUDGMENT AND POST-JUDGMENT INTEREST** as permitted by law;

7.    Such other and further relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Raymond C. Brantley, *Pro Se*

4400 College Park Drive, APT 817

The Woodlands, TX 77384

Phone: (713) 598-8857

Email: raymondbrantley72@gmail.com

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Texas

| | |
|---|---|
| Raymond C. Brantley | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| City of Houston, et al. | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Defendant(s)* | ) |

Civil Action No.

### SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  John Whitmire In his official capacity as Mayor of Houston, 900 Bagby St., Houston, TX 77002

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Raymond Brantley
4400 COllege Park Drive, APT 817
The Woodlands, TX 77384

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____     _____
                                              *Signature of Clerk or Deputy Clerk*